J-A01031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: W.P.T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.M.F., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 914 MDA 2021 |

Appeal from the Decree Entered June 8, 2021
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87030

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:          **FILED: FEBRUARY 14, 2022**

Appellant M.M.F. (Father) appeals from the decree involuntarily terminating his parental rights to his minor child, W.P.T. (Child),[1] pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).[2]  The petition to involuntarily terminate Father's parental rights was filed by Appellee, Berks County Children and Youth Services (the Agency).   Additionally, Father's current counsel, Gwendolen F. Modesti, Esq. (Current Counsel),[3] filed a petition to withdraw,

_____

[1] Child was born in March of 2007.

[2] Child's mother, K.M.T. (Mother), consented to the termination of her parental rights, and a decree confirming her consent was entered on June 8, 2021. Mother is not a party to this appeal.

[3] The record further reveals that Robert Frankel, Esq., served as both Child's legal counsel and guardian *ad litem* (GAL).  Orphans' Ct. Op., 9/7/21, at 17; N.T. Termination Hr'g, 5/3/21 and 6/2/21, at 241-242.  The orphans' court noted that Attorney Frankel served in both capacities and that Child's best

*(Footnote Continued Next Page)*

as well as an ***Anders***[4] brief asserting that Father's appeal is frivolous. After review, we affirm the orphans' court's decree terminating Father's parental rights and grant Current Counsel's petition to withdraw.

The orphans' court summarized the relevant facts and procedural history of this matter as follows:

> [When the Agency sought to have Child adjudicated dependent], he was living with his Paternal Grandparents, T.B. (Paternal Grandmother) and D.B. (Paternal Grandfather) (collectively, Paternal Grandparents) in Douglass Township, Berks County. Mother's whereabouts were unknown. Father was residing in Pottstown, Montgomery County. [The Agency] had been involved with Child's family since 2010 regarding concerns of alcohol and drug abuse, inappropriate physical discipline, unstable housing, and inappropriate parenting skills by Paternal Grandmother.
>
> On September 21, 2018, [the Agency] received a report that Child was afraid to return to Paternal Grandparents' home following an incident where Parental Grandmother allegedly struck Child in the head with a rock and attempted to strangle him. That same day, [the Agency] filed an Emergency Petition for Custody of Child (the Emergency Petition). Subsequently, the Hon. Mary Ann Ullman of the Berks County Court of Common Pleas ordered legal custody of Child be transferred to [the Agency]. On October 3, 2018, an

---

interests and legal interests "were in concert." ***Id. See In re L.B.M.***, 161 A.3d 172, 174-75, 180 (Pa. 2017) (plurality) (courts must appoint counsel to represent the legal interests of a child involved in a contested involuntary termination of parental rights proceeding; a child's legal interests are separate from a child's best interest as a child's legal interests are synonymous with the child's preferred outcome, and a child's best interest must be determined by the court); ***see also In re Adoption of K.M.G.***, 240 A.3d 1218, 1235-36 (Pa. 2020) (where counsel appointed to represent the child's legal interests under 23 Pa.C.S. § 2313(a) also served as GAL, the orphans' court must determine that the child's best interests and legal interests are not in conflict).

[4] ***Anders v. California***, 386 U.S. 738 (1967); ***see also Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).

Adjudication and Disposition Hearing was held before the Hon. Scott D. Keller of the Berks County Court of Common Pleas. Judge Keller ordered custody of Child be transferred to [the Agency] for placement purposes. Father attended that hearing.

Father was not considered as an appropriate resource for Child at that time for several reasons: (1) he lived in a one-bedroom apartment with four other adults; (2) he was unemployed; (3) he did not have a valid driver's license or any form of transportation; and (4) he is an indicated perpetrator of sexual abuse (stemming from an incident in 1999).

Father and Mother were ordered to comply with certain services, treatment, and substance testing. As this appeal concerns Father's parental rights only, this Opinion addresses Father's services and noncompliance. The [orphans' c]ourt expanded the initial list of obligations through subsequent Orders entered in connection with the dependency proceedings as a result of Father's continued failure to make suitable progress. Among other things, the [orphans'] court ordered Father to:

(a) Undergo a sexual offender evaluation and comply with any recommendations;

(b) Undergo a mental health evaluation and comply with any treatment recommendations;

(c) Cooperate with parenting education;

(d) Participate in casework sessions through [the Agency] and comply with any recommendations;

(e) Establish and maintain suitable and appropriate housing and income;

(f) Notify [the Agency] of changes in income or residence;

(g) Sign releases of information as requested;

(h) Have supervised visitations with Child as scheduled and Act appropriately at those visitations;

(i) Undergo an anger management evaluation and comply with any recommendations;

(j) Participate in the recommended Comprehensive Risk Assessment and comply with any recommended services;

(k) Participate in recommended evaluations and drug/alcohol treatment; and

(l) Submit to random urine screens as scheduled.

As set forth in greater detail below, Father failed to comply with services[fn1] or make sufficient progress to permit reunification with Child. As such, Child remained in the custody of [the Agency] for approximately 14 months before [the Agency] filed its Petitions to terminate Mother and Father's parental rights (and approximately 29 months prior to the Termination Hearing).

[fn1] Father's participation in services began well, with the [orphans'] court finding he had been in full compliance (albeit making minimal progress) as of April 2019. Father's participation began trailing off after that time, with [Father] ceasing some services all together and remaining moderately or substantially in compliance with other services. Overall, however, what did not change was his failure to make progress toward alleviating the circumstances necessitating placement of the Child.

Orphans' Ct. Op., 9/7/21, at 3-5 (some formatting altered).

On November 13, 2019, the Agency filed a petition to involuntarily terminate Father's parental rights to Child. Following a hearing held over two days, the orphans' court granted the Agency's petition and entered a decree on June 8, 2021, terminating Father's parental rights. Father filed a timely appeal and concise statement of errors complained of on appeal. The orphans' court filed its opinion on September 7, 2021.

As noted, Current Counsel filed a petition to withdraw and an ***Anders*** brief. In the ***Anders*** brief, Current Counsel identifies the following issues:

1. Did the [orphans'] court err and abuse its discretion in ordering the termination of Father's parental rights involuntarily [pursuant to Section 2511(a)(1)], because [the Agency] did not establish by clear and convincing evidence that Father engaged in conduct continuing for a period of at least six (6) months preceding the

filing of the Petition to Terminate Parental Rights that demonstrates a settled purpose of relinquishing parental claim to [C]hild or has refused or failed to perform parental duties?

2. Did the [orphans'] court err and abuse its discretion in ordering the termination of Father's parental rights involuntarily [pursuant to Section 2511(a)(2)], because [the Agency] did not establish by clear and convincing evidence that Father exhibited repeated and continued incapacity, abuse, neglect or refusal causing the child to be without essential parental care, control or subsistence that Father cannot or will not remedy?

3. Did the [orphans'] court err and abuse its discretion in ordering the termination of Father's parental rights involuntarily [pursuant to Section 2511(a)(5)], because [the Agency] did not establish by clear and convincing evidence that Father cannot or will not remedy the conditions that led to the removal of [C]hild for a period of at least six (6) months, and that said conditions continue to exist?

4. Did the [orphans'] court err and abuse its discretion in ordering the termination of Father's parental rights involuntarily [pursuant to Section 2511(a)(8)], because [the Agency] did not establish by clear and convincing evidence that, during the period of at least twelve (12) months since the time of removal of the child, the conditions leading to removal continue to exist that would warrant termination of Father's parental rights which would best serve the needs and welfare of [Child]?

5. Did the [orphans'] court err and abuse its discretion in ordering the termination of Father's parental rights involuntarily, because [the Agency] did not establish by clear and convincing evidence that no bond existed between the Father and [C]hild that would be irreparably harmed by terminating Father's parental rights [pursuant to Section 2511(b)]?

*Anders* Brief at 7-8 (some formatting altered).

When presented with an *Anders*/*Santiago* brief, this Court may not review the merits of any underlying issues without first examining the request to withdraw. *See In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014). As this Court has stated:

To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

> With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

**In re J.D.H.**, 171 A.3d 903, 907 (Pa. Super. 2017) (citations omitted).[5]

Additionally, counsel is required to file a brief that meets the following requirements established by the Pennsylvania Supreme Court in **Santiago**:

> (1) provide a summary of the procedural history and facts, with citations to the record;

> (2) refer to anything in the record that counsel believes arguably supports the appeal;

> (3) set forth counsel's conclusion that the appeal is frivolous; and

> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

---

[5] On November 1, 2021, Father filed a *pro se* application for an extension of time to file a response to the **Anders** Brief and Current Counsel's petition to withdraw. On November 8, 2021, this Court granted Father's application and directed that Father's response was due on or before November 16, 2021. This Court further noted that failure to file a timely response could result in waiver of any issues Father sought to raise. Order, 11/8/21. Father has not filed a response.

***In re Adoption of M.C.F.***, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citations omitted).

"After an appellate court receives an ***Anders*** brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." ***In re S.M.B.***, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted). Our independent review is not limited to the issues discussed by Current Counsel, but extends to "additional, non-frivolous issues" that may have been overlooked by Current Counsel. ***J.D.H.***, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it lacks any basis in law or fact. ***See M.C.F.***, 230 A.3d at 1220; ***accord Santiago***, 978 A.2d at 355-56.

On this record, we conclude that Current Counsel has complied with the ***Anders***/***Santiago*** procedures by filing a petition to withdraw and supplying Father with a copy of the ***Anders*** brief and a letter explaining Father's appellate rights. ***Anders*** Brief, 10/12/21; Petition to Withdraw, 10/12/21; Correspondence, 10/12/21. Moreover, the ***Anders*** brief includes a summary of the relevant facts and procedural history, and Current Counsel explains her reasons for concluding that the issues are frivolous. ***Anders*** Brief, 10/12/21. Because Current Counsel has complied with the threshold requirements to withdraw, we proceed to an independent review of whether the issues are frivolous. ***See S.M.B.***, 856 A.2d at 1237.

As noted above, Current Counsel identifies issues wherein it is alleged that the orphans' court erred or abused its discretion in terminating Father's parental rights to Child pursuant to Section 2511(a) and (b). We begin by stating our standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted and formatting altered). Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We note that we need only agree with the orphans' court as to any one subsection of

Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

We first address Father's issue concerning the involuntary termination of Father's parental rights under Section 2511(a)(8), because it is dispositive.

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8).

Section 2511(a)(8) sets a twelve-month time frame for a parent to remedy the conditions that led to the child's court-ordered removal. *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the twelve-month time frame has been established, the orphans' court must determine whether the conditions that led to the child's removal continue to exist, despite the reasonable efforts of the child welfare agency. *Id.* The "relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009) (citations omitted).

- 9 -

Termination under Section 2511(a)(8) does not require the orphans' court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of the agency's services. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003). "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *Id.* (citations omitted).

As noted above, the Agency has been involved for several years, and Child was adjudicated dependent on October 3, 2018. When the termination hearings began on May 3, 2021, Child had remained in placement for more than thirty months. During this time, Father was either unwilling or unable to care for himself or Child, and the orphans' court addressed the circumstances as follows:

> The [orphans' c]ourt can appreciate that Father cares for Child. That said, given numerous opportunities, Father has not shown he can comply with and follow through with court ordered obligations. Although Father did complete and comply with parenting casework through Child and Family First, it came after his behavior was so concerning to Child's safety that visitations were cutoff . . . . Further, he has shown no interest in addressing his myriad mental health and substance abuse issues and, instead, has chosen to remain in conflict with nearly every person charged with assisting him in making life improvements and supervising his progress.

> Father treated [the Agency's] caseworkers with disdain and intimidation. He sought out personal information to present to them as some sort of powerplay, which in no manner was helpful or could be construed to in anyway be illustrative of someone seeking to show they are good parent. When faced with adversity or criticism, Father has responded with unkind words to Child ("ungrateful bastard," "ass whipping," and "see you when you're

- 10 -

18") and blanket denials of evaluations done by various unrelated mental health professionals. Father would have the [orphans'] court believe that Dr. Rotenberg, Ms. Fritts, and Ms. Karlunas[6] are all working against him by having similar impressions and reviews of his mental health and fitness to parent, despite none of them working together at the same establishment or even speaking with one another about Father. Yet, they offer consistent analyses of the state of [Father's] mental health.

Based upon testimony from the caseworkers and the guardian *ad litem*, it is clear Child is bonded with the foster parents. Terminating Father's parental rights will not detrimentally affect Child. In fact, Child has advocated for himself, both clearly and bravely, that he wants nothing to do with his former life, including Father. In any event, in no sense has Father ever truly provided for or cared for [Child]. Instead, from the earliest years of Child's life, it was Paternal Grandmother who "cared" for Child while at the same time submitting him to years of physical and emotional abuse. It is now foster parents who care for Child. They present as a long-term resource who can continue to meet Child's developmental, physical, and emotional needs and give him the life that every child deserves; one free of conflict, stress, fear, abuse, and neglect. It is, therefore, in the Child's best interest to continue in the care of his foster parents.

Put simply, Father was unable or unwilling to comply with court-ordered services and to make the changes necessary to provide for a safe, healthy, and permanent living environment for Child. After much reflection on the matter, and after careful consideration, the [orphans'] court terminated Father's parental rights to offer Child the permanency he needs. Child deserves

---

[6] Dr. Larry Rotenberg, M.D., testified as an expert in psychiatry, and he performed an evaluation of Father at the Agency's request. **See** N.T. Termination Hr'g, 5/3/21 and 6/2/21, at 118-119. Dr. Rotenberg concluded that Father had paranoid personality disorder, multi-substance use disorder, and intermittent explosive disorder. **Id.** at 128; Exhibit 44. Ms. Laura Fritts is a psychotherapist working at Berks Counseling and Associates who performed an evaluation of Father. **Id.** at 10. Ms. Fritts testified that Father lacks the capacity to care for Child and look after Child's safety. **Id.** at 18-23. Ms. Andrea Karlunas is a Licensed Social Worker who met with Father for an evaluation after a referral by the Agency. **Id.** at 37-38. Ms. Karlunas testified that Father lacks the skills to provide Child a safe environment, and he does not manage his emotions in a healthy fashion. **Id.** at 45-47.

stability, permanency, and an opportunity to grow up in an environment free of the disruption and turmoil surrounding the dependency process.

Orphans' Ct. Op. at 19-21 (formatting altered).

The orphans' court found the Agency's witnesses were credible. ***Id.*** at 6. After review, we agree that the Agency's witnesses supported the orphans' court's conclusion that Father made minimal progress towards alleviating the circumstances which necessitated Child's original placement with the Agency along with the initial finding of dependency. Social worker Ms. Andrea Karlunas and Dr. Larry Rotenberg testified that Father's sex offender status, lack of anger management skills, scary and intimidating disposition, mental health issues, and drug abuse make Father an unsafe resource for Child. N.T. Termination Hr'g at 38-48, 122-140. Further, an Agency adoption caseworker, Christine Esterly, testified that Father has not sought drug and alcohol treatment, and Father's visits with Child were suspended due to Father's threatening and intimidating behavior. ***See id.*** at 160-162 (noting that following a June 2019 hearing, Father said Child's behavior deserved an "ass whooping," and Father said he felt disrespected and would have hurt people if there were there not so many people in the courtroom with guns). Additionally, Ms. Esterly stated that Child is doing well in foster care, the foster parents want to adopt Child, and Child calls the foster parents "mom and dad." ***Id.*** at 165-184. Robert Frankel, Esq., Child's legal counsel and GAL testified that Child does not want contact with Father, and Child looks forward to being adopted. ***Id.*** at 241-243. Child's mental health has improved while in foster

care as has his schoolwork. *Id.* Attorney Frankel stated that terminating Father's parental rights and allowing the foster parents to adopt Child is in the Child's best interests. *Id.*

The testimony cited above supports the orphans' court's finding that Father has failed to and lacks the capacity to perform his parental duties. We reiterate that Child's life cannot be put on hold in the hopes that Father will summon the ability to manage the responsibilities of parenting. *See M.E.P.*, 825 A.2d at 1276. After review, we discern no error of law or abuse of discretion in the orphans' court's involuntarily termination of Father's parental rights under Section 2511(a)(8), which is supported by the record based on clear and convincing evidence. Moreover, we agree with Current Counsel's assessment that Father's appellate issues are meritless.[7]

We next review whether involuntarily terminating Father's parental rights best serves Child's developmental, emotional, and physical needs and welfare pursuant to Section 2511(b).

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the

---

[7] As noted above, we need agree with the orphans' court regarding one subsection of 2511(a), to affirm an order terminating parental rights. *See B.L.W.*, 843 A.2d at 384. As such, we need not address the remaining subsections, except to state that because we agree with the orphans' court relative to Section 2511(a)(8), further analysis or even the inability of the Agency to develop clear and convincing evidence pursuant to subsections (a)(1), (2), or (5), would not entitle Father to appellate relief. *See id.*

control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).  We have explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (internal citations omitted and formatting altered).  "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."  *T.S.M.*, 71 A.3d at 268.  In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind."  *Id.* at 269.  "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly.  When courts fail . . . the result, all too often, is catastrophically maladjusted children."  *Id.*

As noted above, the orphans' court found that although Father expressed concern for Child, Child is bonded with the foster parents. Orphans' Ct. Op. at 19-20. Child was adjudicated dependent on October 3, 2018, when he was only eleven years old, and Child has been in Agency placement since the allegations of violence by Paternal Grandmother against Child on September 21, 2018. N.T. Termination Hr'g at 160-184. Further, Father has no visitation with Child, and adoption caseworker Ms. Esterly and Attorney Frankel testified that Child would not suffer any negative impact from the termination of Father's parental rights. *Id.* at 160-161; 241-243. Ms. Esterly testified that Child wants no contact with Father, wants to be adopted by the foster parents, and Child views his foster parents as "mom and dad." *Id.* at 166-184. Based on the record including credited testimony, the orphans' court concluded that Father has made minimal progress toward alleviating the circumstances that necessitated adjudicating Child dependent and placing Child in foster care, and that Child is bonded with the foster parents as opposed to Father. Orphans' Ct. Op. at 6, 19-20.

On this record we conclude that there was no abuse of discretion in the orphans' court's determination that terminating Father's parental rights best serves the needs and welfare of Child under Section 2511(b). *See C.D.R.*, 111 A.3d at 1219. Moreover, we agree with Current Counsel's assessment that Father's Section (b) issue is frivolous.

For the reasons set forth above, we discern no abuse of discretion or error of law in the orphans' court's involuntarily termination of Father's

parental rights to Child. Additionally, we have conducted an independent review of the record and conclude that Father's appeal is frivolous and that Current Counsel has not overlooked any additional, non-frivolous issues. For these reasons, we grant Current Counsel's petition to withdraw, and we affirm the decree terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) and (b).

Decree affirmed. Petition to withdraw is granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/14/2022